# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL INC. AND KEDE GROUP, INC., | ) ) 5:16-cv-02406-RSWL-SP |
| Plaintiffs, | ) ) **ORDER RE: PLAINTIFFS'** |
| | ) **MOTION FOR SUMMARY** |
| v. | ) **JUDGMENT** [45] ) |
| | ) |
| CHINA UNITED TRANSPORT, INC., DBA C.U. TRANSPORT, INC.; AND DOES ONE THROUGH TEN, | ) ) ) ) |
| | ) |
| Defendant. | ) ) |

Currently before the Court is Plaintiffs Krystal Inc. ("Krystal") and Kede Group, Inc.'s ("Kede") (collectively, "Plaintiffs") Motion for Summary Judgment ("Motion") [45]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiffs' Motion as to liability under their breach of contract claim, **DENIES as MOOT** Plaintiffs' Motion as

to liability under their negligence claim, and **DENIES** Plaintiffs' Motion as to the amount of damages.

## I. BACKGROUND

**A.** **Factual Background**

Plaintiffs are owners, sellers, and exporters of motor vehicles. Compl. ¶ 7, ECF No. 1. Defendant is a licensed non-vessel-operating common carrier who provides ocean transportation of cargo from the United States to foreign countries. Id. ¶ 8.

Plaintiffs allege that they agreed to sell a Mercedes Benz Sprinter van (the "Cargo") to Krystal Dalian Automotive Sales Co., Ltd. ("Dalian") for $72,980.00. Decl. of Jack Xu ("Xu Decl.") ¶ 5, Ex. A, ECF No. 45-7. The invoice, however, names Grand Union Autotrade Group Corporation ("Grand Union") as the buyer. Decl. of Ruby Hu ("Hu Decl."), Ex. 2, ECF No. 47-3. According to Qiuchen Wang, Director of Dalian, Dalian agreed to sell the Cargo to Tangwei Xu, a Chinese buyer, for 1,350,000.00 Chinese Yuan Renminbi ("CNY"), equal to $217,678.74. Decl. of Quichen Wang ("Wang Decl.") ¶ 5, Ex. A, ECF No. 45-3.

On November 5, 2015, Plaintiffs contracted with Defendant to transport the Cargo from the United States to China. Compl. ¶ 9. On November 18, 2015, Defendant issued a "Clean on Board" Bill of Lading, the contract for shipment, to Krystal, stating that the Cargo was loaded into an "open top" shipping container. Xu Decl., Ex. B, ECF No. 45-8.

2

Section Six of the Bill of Lading, labeled "Extent of liability," states, "C.U. Transport Inc. shall be liable for loss or damage to the goods occurring between the time when he received the goods into his charge and the time of delivery." Id. The Bill of Lading also states,

> When C.U. Transport Inc is liable for compensation in respect of loss or of damage to the goods, such compensation shall be calculated by reference to the value of such goods at the place and time they are delivered to the consignee in accordance with the contract or should have been so delivered.

> The value of the goods shall be fixed according to the commodity exchange price, or, if there be no such price, according to the current market price, by reference to the normal value of goods of the same kind of quality.

> C.U. Transport Inc. shall hold a single carrier's liability for cargo transported under Through Bill of Lading. The carrier's liability is limited to US $2.00 per kilogram or US $100.00 per shipment which ever is smaller.

Id.

On December 1, 2015, Ruby Hu, working for Defendant, emailed Jenny Chao at Kede to inform Ms. Chao that the Cargo had been damaged. Decl. of Jenny Chao ("Chao Decl."), Ex. C, ECF No. 45-12. On January 12, 2016, Dalian United International Inspection Co., Ltd. conducted a survey of the Cargo. Hu Decl., Ex. 3. The Report of Survey concluded, "the cargo were damaged partly." Id.

**B. Procedural Background**

Plaintiffs filed their Complaint on November 21, 2016 against Defendant [1]. The Complaint alleges two

causes of action against Defendant, breach of contract and negligence.  <u>See</u> Compl.

Plaintiffs filed their Motion on August 4, 2017 [45].  Defendant filed its Opposition on August 15, 2017 [47].  Plaintiffs filed their Reply on August 22, 2017 [48].

## II. FINDINGS OF FACT

1. Plaintiffs delivered the Cargo to Defendant at the port of loading in good condition.  Def.'s Stmt. of Genuine Issues in Opp'n to Mot. for Summ. J. ¶ 9; Chan Decl., Ex. 1.

2. The Cargo was discharged in damaged condition at the port of discharge.  Chao Decl., Ex. C.

## III. DISCUSSION

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>,

715 F.2d 1327, 1329 (9th Cir. 1983).  In ruling on a
motion for summary judgment, the court's function is
not to weigh the evidence, but only to determine if a
genuine issue of material fact exists.  <u>Anderson</u>, 477
U.S. at 255.

Under Rule 56, the party moving for summary
judgment has the initial burden to show "no genuine
dispute as to any material fact."  Fed. R. Civ. P.
56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>,
210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden
then shifts to the non-moving party to produce
admissible evidence showing a triable issue of fact.
<u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03.

The standard for a motion for summary judgment
"provides that the mere existence of *some* alleged
factual dispute between the parties will not defeat an
otherwise properly supported motion for summary
judgment; the requirement is that there be no *genuine*
issues of *material* fact."  <u>Anderson</u>, 477 U.S. at 247-
48.

**B.   Discussion**

1.   <u>The Court **GRANTS** Plaintiffs' Request for</u>
<u>Judicial Notice</u>

Plaintiffs seek judicial notice of the exchange
rates for the CNY to the U.S. dollar from the Federal
Reserve's website.  Pls.' Req. for Judicial Notice
("RJN") ¶ 1.  A court may take judicial notice of a
fact that is not subject to reasonable dispute because

it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Exchange rates listed on the Federal Reserve's system are a "fitting subject of a request for judicial notice." HostLogic ZRT v. GH Int'l, Inc., No. 6:13-cv-982-Orl-36KRS, 2014 U.S. Dist. LEXIS 88680, at *27 (M.D. Fla. June 10, 2014)(taking judicial notice of Euro to U.S. Dollar exchange rate from Federal Reserve System). As such, the Court **GRANTS** Plaintiffs' Request for Judicial Notice of the CNY to U.S. dollar exchange rate contained on the Federal Reserve's website.

Plaintiffs also seek judicial notice of a page from the Federal Maritime Commission's website showing that Defendant is licensed to operate as a non-vessel-operating common carrier. See RJN ¶ 2. Defendant does not dispute that it has a non-vessel-operating common carrier license from the Federal Maritime Commission. See Def.'s Stmt. of Genuine Issues in Opp'n to Mot. for Summ. J. ¶ 6. The license shown on the Federal Maritime Commission's website is a public record whose accuracy cannot reasonably be questioned. Consequently, the Court **GRANTS** Plaintiffs' Request for Judicial Notice of Defendant's license from the Federal Maritime Commission.

///
///
///

2.  <u>Defendant's Evidentiary Objections to</u>
    <u>Plaintiffs' Declarations Are</u> **OVERRULED in part**
    <u>and</u> **SUSTAINED in part**

   a.  *Chao Declaration*

Defendant objects to Exhibits A and B to the Chao Declaration, the Booking Confirmation and Receipt of Cargo respectively. Defendant argues that Plaintiffs have failed to properly authenticate the Exhibits as a business record. Def.'s Evid. Objs. to Chao Decl. 2:6-10. However, as Plaintiffs point out in their Response to Defendant's Evidentiary Objections, Defendant ignores Federal Rule of Evidence 901, which states that witness testimony can be used to authenticate evidence. Pls.' Resp. to Def.'s Evid. Objs. 2:9-11; <u>see</u> Fed. R. Evid. 901(b)(1). Defendant has not objected based on hearsay, merely lack of authentication, and while a business record is self-authenticating, Ms. Chao can also authenticate the Exhibits through her testimony. Fed. R. Evid. 901(b)(1). Based on Ms. Chao's personal knowledge of Kede's business practices and procedures, Kede's document retention system, and where Kede keeps its files in the ordinary course of its business, Ms. Chao can testify that the documents are what they purport to be. The Court therefore finds that there is sufficient indicia of authenticity to support the admissibility of Exhibits A and B and **OVERRULES** Defendant's authenticity objection.

Defendant objects to paragraphs 5-7 of the Chao

Declaration[1] on the basis that Ms. Chao lacks personal knowledge of the events about which she is testifying. Def.'s Evid. Objs. to Chao Decl. 4:15-26. However, the Chao Declaration states that Ms. Chao is the Secretary of Kede, and as the Secretary, she "assists with the overall management of Kede's business" and has "personal knowledge of Kede's business practices and procedures." Chao Decl. ¶¶ 3-4. In paragraphs 5-7, Ms. Chao is testifying to events that occurred during her employment and about which she would have known as Secretary of Kede. <u>Redwind v. W. Union, LLC</u>, No. 3:14-cv-01699-AC, 2016 U.S. Dist. LEXIS 57793, at *64 (D. Or. May 2, 2016)("Each statement to which Redwind objected for lack of personal knowledge was made about the declarants' employment and events which occurred during the scope of that employment."). Accordingly, the Court **OVERRULES** Defendant's lack of personal knowledge objections.

Defendant objects to Ms. Chao's testimony regarding the exhibits attached to her Declaration based on the best evidence rule. However, Ms. Chao is not testifying to the contents of the documents, she merely attaches them to her Declaration. Therefore, the Court

---

[1] Defendant objects to the statement in paragraph 5, "Kede requested a quote for transportation of Cargo . . . ." Defendant objects to the statement in paragraph 6, "Kede accepted a quote and tendered the Cargo shipment." Finally, Defendant objects to the statement in paragraph 7, "On November 5, 2015, C.U., received the Cargo from Kede in good order and condition attaching Exhibit B."

should **OVERRULE** Defendant's best evidence rule objections.

   b.   *Xu Declaration*

Defendant objects to Exhibit A of the Xu Declaration, the invoice for the sale of the Cargo from Krystal to "Grand Union," for lack of authentication. Def.'s Evid. Objs. to Xu Decl. 2:6-10.  However, Defendant also attaches the Invoice as an exhibit to the Chan Declaration.[2]  <u>See</u> Chan Decl., Ex. 1.  By offering the Invoice as evidence in support of its Opposition, Defendant is agreeing that the Invoice is authentic.  <u>Forest Labs., Inc. v. Ivex Pharm., Inc.</u>, 237 F.R.D. 106, 117 (D. Del. 2006)(overruling foundation objection where defendants offered the same exhibit to which they were objecting).  Accordingly, the Court **OVERRULES** Defendant's objection to Exhibit A to the Xu Declaration.

Defendant then objects that Mr. Xu's testimony about Krystal's sale of the Cargo to Dalian is inadmissible because the Invoice is the best evidence of the sale.  Def.'s Evid. Objs. to Xu Decl. 6:7-14. As Defendant notes, the Invoice does not name Dalian as the buyer, but rather names Grand Union.  <u>Id.</u>  The

_____

[2] The only difference between the two documents is that Plaintiffs attach as Exhibit A a copy of the Invoice that was attached to the Report of Survey regarding the potential damage to the Cargo, so the copy of the Invoice is on the Report of Survey letterhead.  The contents of the two invoices are the same.

Court agrees that the Invoice is the best evidence to prove the contents of the Invoice, not Mr. Xu's testimony, and **SUSTAINS** Defendant's objection to paragraph 5 of the Xu Declaration.

### c. *Wang Declaration*

Defendant objects that the Wang Declaration fails to properly authenticate the three exhibits attached to the Declaration: (1) the sales contract between Dalian and the Chinese buyer of the Cargo, (2) the repair quote, and (3) the Assignment of Rights. See Wang Decl., Exs. A-C.

First, Ms. Wang testifies in her Declaration that she is the Director of Dalian and her duties include "assisting with the overall management of Dalian's business." Id. ¶ 3. Ms. Wang therefore has personal knowledge of the sales Dalian makes. Further, the sales contract names Dalian and the Chinese buyer and appears to be what Ms. Wang claims it to be. See Las Vegas Sands, Ltd. Liab. Co. v. Nehme, 632 F.3d 526, 533 n.6 (9th Cir. 2011)("[A]uthentication sufficient for admissibility can be satisfied by the object's '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" (quoting Fed. R. Evid. 901(b)(4))). Therefore, Ms. Wang has authenticated the sales contract.

Second, the repair quotation also appears to be what Ms. Wang claims it to be. It specifically states

that the quotation is for a 2014 Mercedes Benz Sprinter roof with the same VIN number as the Cargo. Accordingly, Ms. Wang has sufficiently authenticated the repair quotation.

Third, the Assignment of Rights contains Ms. Wang's signature, and she testifies that the exhibit is a true and correct copy of the Assignment. See APL Co. Pte. Ltd. v. UK Aerosols Ltd., No. C 05-00646 MHP, 2007 U.S. Dist. LEXIS 12689, at *26 (N.D. Cal. Feb. 22, 2007)(overruling authentication objection when witness testified to personal knowledge of the agreement and the agreement had his signature on it). Therefore, Ms. Wang has sufficiently authenticated the Assignment of Rights exhibit.

Defendant's lack of authentication objections to the exhibits attached to the Wang Declaration are therefore **OVERRULED**.

Defendant also objects to these Exhibits on the grounds that they are inadmissible hearsay. Def.'s Evid. Objs. to Wang Decl. 7:9-8:17. Plaintiffs briefly address the hearsay objection as it pertains to the repair quote, arguing that it is a business record. Pls.' Resp. to Def.'s Evid. Objs. 7:15-24. However, to qualify as a business record, Federal Rule of Evidence 803(6) requires that a declarant state (1) that the record was made at or near the time of the event recorded (2) by a person with knowledge, (3) the record were kept in the course of a regularly conducted

business activity, and (4) it was the regular practice of that business activity to make the record. Ms. Wang's Declaration does not mention any of these four requirements in reference to any of the attached Exhibits. See Li v. Affordable Art Co., No. 1:12-CV-03523 RLV, 2014 U.S. Dist. LEXIS 190314, at *15 (N.D. Ga. Feb. 10, 2014)(concluding that exhibits did not fall within the business records exception because the accompanying declaration did not include all four of the requirements under Rule 803(6)). Accordingly, Defendant's hearsay objections to the Wang Declaration Exhibits are **SUSTAINED**.

Defendant also objects to three statements Ms. Wang makes in her Declaration. It first objects to the statement, "Kede began to modify the Cargo to meet the requirements of Dalian's Chinese buyer." Wang Decl. ¶ 5. Ms. Wang does not provide any foundation for how she knows this information, much less that she has any connection to Kede. Ms. Wang has failed to provide any testimony of her personal knowledge of this statement. Therefore, Defendant's objection to this statement is **SUSTAINED**.

Defendant also objects to paragraph 6 on the basis that Ms. Wang has not shown she has personal knowledge of Dalian obtaining a repair quotation for the Cargo. Def.'s Evid. Objs. to Wang Decl. 6:3-9. Paragraph 6 states: "Dalian obtained a repair estimate of CNY 534072.00, equal to $82,291.53 on the basis of the

then-prevailing exchange rate." Wang Decl. ¶ 6.  Ms.
Wang also testified that she is the Director of Dalian
and is responsible for overseeing the management of the
business.  Id. ¶¶ 2-3.  This is sufficient to establish
personal knowledge.  See Redwind, 2016 U.S. Dist. LEXIS
57793, at *64.  Therefore, Defendant's lack of personal
knowledge objection to paragraph 6 is **OVERRULED.**

Defendant objects to paragraph 7 on the basis that
it is hearsay and Ms. Wang has not demonstrated that
she has personal knowledge necessary to make this
statement.  Def.'s Evid. Objs. to Wang Decl. 6:9-13.
Ms. Wang has not shown how she has any personal
knowledge of the cost of the Cargo at origin or whether
she was at all involved in determining the cost of the
Cargo.  Additionally, the fact that the repairs were
not acceptable to the Chinese buyer of the Cargo is
hearsay because it is the Chinese buyer's out-of-court
statement offered for its truth.  Ms. Wang has not
demonstrated that she participated in conversations
with the Chinese buyer.  Because she has failed to show
how she has any personal knowledge of these statements,
and Plaintiffs have failed to establish how the
statements from the Chinese buyer fall within an
exception to the hearsay rule, the Court **SUSTAINS**
Defendant's objections to paragraph 7.

2.   Plaintiffs' Evidentiary Objections Are
**OVERRULED in part** and **SUSTAINED in part**

Plaintiffs object to statements made in the Chan

and Hu Declarations. Many of Plaintiffs' objections "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded," and therefore, the Court **OVERRULES** each of these objections. <u>See United States v. HIV Cat Canyon, Inc.</u>, 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); <u>see also</u> <u>Stonefire Grill, Inc. v. FGF Brands, Inc.</u>, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013)(refusing to "scrutinize each objection and give a full analysis of identical objections"); <u>Amaretto Ranch Breedables v. Ozimals, Inc.</u>, 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012)("This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development, and the Court accordingly summarily overrules the objections." (internal citations omitted)). The Court will only address the objections for which Plaintiffs have provided specific argument.

Plaintiffs object to the statement in paragraph 3 of the Chan Declaration where Ms. Chan states, "[Jenny Xu of Plaintiff Krystal] acknowledged this," when referring to Ms. Xu's ability to purchase marine insurance for any cargo Defendant shipped. Whether Defendant provided Plaintiffs with an opportunity to purchase marine insurance is irrelevant to the analysis of Plaintiffs' Motion. Because the Court does not rely on this statement in ruling on Plaintiffs' Motion, the Court **OVERRULES** this objection **as MOOT**.

Plaintiffs object to the statement, "Sharon Yu and Jenny Xu declined to obtain marine insurance, which would have resolved the issue," which is contained in both the Chan and Hu Declarations. <u>See</u> Chan Decl. ¶ 8; Hu Decl. ¶ 6. As noted above, the offer of marine insurance is irrelevant to the Court's ruling on Plaintiffs' Motion. As such, the Court **OVERRULES** this objection **as MOOT**.

Plaintiffs make the same objection to several statements in both the Chan and Hu Declarations, which all state the declarant is "aware" of a certain fact. <u>See</u> Chan Decl. ¶¶ 8, 11, 14, 16-19; Hu Decl. ¶¶ 8-9, 12, 14-16. Plaintiffs argue that awareness is not sufficient for personal knowledge. Pls.' Evid. Objs. to Chan Decl. 2:11-18. However, both declarants have established that they were directly involved in communicating with Plaintiffs' employees about the shipment of the Cargo. Chan Decl. ¶¶ 3-4; Hu Decl. ¶ 2. Therefore, the declarants' awareness of the statements to which they testify are based on adequate personal knowledge. The Court **OVERRULES** Plaintiffs' lack of personal knowledge objections based on the use of the word "aware."

Plaintiffs object to the following statement in the Chan Declaration, "In this instance, I am aware that neither the trucking company, nor US Lines, nor APM Terminals called C.U. Transport to alert C.U. Transport that the Sprinter was damaged while being transported

to the APM Terminals," Chan Decl. ¶ 16, on the grounds
that Ms. Chan does not have personal knowledge of
whether the entities called Defendant.  Pls.' Evid.
Objs. to Chan Decl. 4:23-5:8.  Ms. Chan has not
established how she knows none of the entities called
Defendant regarding the damage to the Cargo.  As such,
Plaintiffs' objection to this statement is **SUSTAINED**.

Plaintiffs object to the statement, "In previous
shipments, Krystal, Inc. also had the ability to
declare a higher value on the bill of lading."  Hu
Decl. ¶ 3.  Plaintiffs argue that Ms. Hu has not
established personal knowledge necessary to make this
statement.  Pls.' Evid. Objs. to Hu Decl. 1:7-16.
However, Ms. Hu testified in her Declaration that she
had worked previously with Plaintiff Krystal, and the
"course of dealing" between herself and Plaintiff
Krystal "indicate [the] pattern for value declaration."
Hu Decl. ¶ 11.  Based on her previous dealings with
Plaintiff Krystal, Ms. Hu has shown personal knowledge
of the statement she has made, and the Court **OVERRULES**
this objection.

Plaintiffs object to the statement, "I am aware
that Sharon Yu and Jenny Xu of Krystal, Inc. had the
opportunity on numerous transactions to indicate a
different value on the Bill of Lading yet never did,"
Hu Decl. ¶ 11, on the grounds that Ms. Hu lacks
personal knowledge of what the women "had the
opportunity" to do.  Pls.' Evid. Objs. to Hu Decl. 4:4-

11. However, Ms. Hu states that her prior course of dealing with the women provides evidence of this practice. Hu Decl. ¶ 11. As such, Ms. Hu has personal knowledge of what the women had the opportunity to do, and the Court **OVERRULES** the objection.

    4. <u>The Court **GRANTS** Plaintiffs' Motion as to Breach of Contract Liability, **DENIES as MOOT** Plaintiffs' Motion as to Negligence Liability, and **DENIES** Plaintiffs' Motion as to Damages</u>

The Court turns to the merits of Plaintiffs' Motion.[3]

    a. *Liability for Damage to Goods Under COGSA*

In this matter, Plaintiffs bring breach of contract and negligence claims based on alleged damage that occurred to the Cargo during shipment. The parties do not dispute that COGSA governs the shipment in this matter and any potential liability for damage to the Cargo during shipment. <u>See</u> Mot. 3:25-4:6; Opp'n 9:18-19. COGSA "was enacted to allocate risk of loss and create predictable liability rules for ocean carriers

---

[3] Defendant notes that it was not aware Plaintiffs were assignees of Dalian, to whom Plaintiffs sold the Cargo. Opp'n 9:25-10:1. Rather, the commercial invoice Defendant received named Grand Union as the buyer of the Cargo. <u>Id.</u> at 3:13-15. Defendant therefore included Grand Union on the Bill of Lading. <u>Id.</u> at 3:17-18. While Defendant argues that Plaintiffs failed to inform Defendant that Plaintiffs were suing as assignees of Dalian, Defendant does not argue that the Court should deny the Motion for that reason. Rather, Defendant simply states that "Plaintiffs stand in the shoes of their assignor and are subject to all of the defenses existing at the time of the assignment." <u>Id.</u> at 10:3-6. As such, the Court addresses the merits of Plaintiffs' Motion.

and shippers." <u>Indem. Ins. Co. of N. Am. v. Totem</u>
<u>Ocean Trailer Express</u>, No. C13-6093 BHS, 2015 U.S.
Dist. LEXIS 15488, at *6-7 (W.D. Wash. Feb. 9, 2015).
"Every bill of lading or similar document of title
which is evidence of a contract for the carriage of
goods by sea to or from ports of the United States, in
foreign trade, shall have effect subject to the
provisions of [COGSA]." 46 U.S.C.S. § 30701 note
(Language of COGSA). Therefore, COGSA specifically
governs the Bill of Lading in this matter and any
potential breach of the Bill of Lading Plaintiffs are
alleging.

  "Generally under COGSA, a shipper establishes a
prima facie case against the carrier by showing that
the cargo was delivered in good condition to the
carrier but was discharged in a damaged condition."
<u>Taisho Marine & Fire Ins. Co. v. M/V Sea-Land</u>
<u>Endurance</u>, 815 F.2d 1270, 1274 (9th Cir. 1987).

  Defendant disputes the fact that Plaintiffs
delivered the Cargo to Defendant in good condition.
<u>See</u> Stmt. of Genuine Issues in Opp'n to Mot. for Sum.
J. ¶ 8. However, Defendant does not dispute that it
issued a "Clean on Board" Bill of Lading. <u>See id.</u> ¶ 9.
"[I]n the usual cargo-damage case the shipper makes a
showing of good condition on shipment sufficient for
its prima facie case by introducing a 'clean' bill of
lading." <u>Daido Line v. Thomas P. Gonzalez Corp.</u>, 299
F.2d 669, 671 (9th Cir. 1962). Because there is a

"clean" Bill of Lading, which Defendant does not dispute, Plaintiffs have established that they delivered the Cargo to Defendant in good condition.

Plaintiffs must then prove that the Cargo was discharged in a damaged condition. <u>Taisho</u>, 815 F.2d at 1274. Defendant does not dispute that the Cargo arrived in the port in China in a damaged condition, nor could they do so. Plaintiffs include as an exhibit to the Chao Declaration an email from Ruby Hu of Defendant to Jenny Chao of Plaintiff Kede in which Ms. Hu states, "Sorry to inform you that your car has been damaged." Chao Decl., Ex. C. To prove liability, Plaintiffs need only show that the Cargo was discharged in a damaged condition. <u>In re Complaint of Damodar Bulk Carriers, Ltd.</u>, 903 F.2d 675, 683 (9th Cir. 1990). Plaintiffs have met their burden to do so, and Defendant has offered no evidence to raise a genuine issue of material fact as to whether the Cargo was damaged upon arrival to port.

Ultimately, there is no genuine issue of material fact as to the two elements of liability under COGSA. As noted, COGSA governs Plaintiffs' breach of contract claim, which alleges a breach of the Bill of Lading. Compl. ¶¶ 10-11. The Court **GRANTS** Plaintiffs' Motion as to liability under their breach of contract claim. Because the Court has granted Plaintiffs' Motion as to liability for their breach of contract claim, Plaintiffs' Motion as to liability for their negligence

claim is **DENIED as MOOT**.

          b. *Limitation of Liability in the Bill of Lading*

After determining that no genuine issue of material fact exists as to whether Defendant is liable for a breach of contract under COGSA, the Court must determine whether a genuine issue of material fact exists as to the amount of damages for which Defendant is liable.

The focus of the parties' arguments in regards to Plaintiffs' Motion is whether the Bill of Lading properly limited the amount of Defendant's liability. COGSA limits a carrier's liability for loss and damage to goods shipped:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $ 500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C.S. § 30701 note. This limitation only applies "if the shipper is given a 'fair opportunity' to opt for a higher liability by paying a correspondingly greater charge." <u>Nemeth v. Gen. S.S. Corp.</u>, 694 F.2d 609, 611 (9th Cir. 1982). "[T]he burden of proving 'fair opportunity' is initially upon the carrier." <u>Komatsu, Ltd. v. States S.S. Co.</u>, 674 F.2d 806, 809 (9th Cir. 1982). "[T]he mere incorporation of COGSA by

reference is not adequate." <u>Mori Seiki USA, Inc. v.</u>
<u>M.V. Alligator Triumph</u>, 990 F.2d 444, 449 (9th Cir.
1993). Instead, the bill of lading must explicitly
include the specific limitation of liability language
of COGSA or language "'to the same effect' as the
statute." <u>Id.</u> (citation omitted).

Prior to addressing whether Plaintiffs were
provided with a fair opportunity to opt for higher
liability, Defendant argues that it is under no
obligation to alert Dalian, and therefore Plaintiffs as
the assignees of Dalian, of the limitation of liability
because Dalian was a consignee. Opp'n 10:11-15. It
argues that the Ninth Circuit has determined that a
carrier does not have to alert consignees or other
third parties of the limitation of liability. <u>Id.</u> at
10:9-13 (citing <u>Carman Tool & Abrasives, Inc. v.</u>
<u>Evergreen Lines</u>, 871 F.2d 897, 900-01 (9th Cir. 1989)).
Relying on <u>Carman</u>, Defendant oddly argues that "without
notice of the limitation of liability codified in
COGSA, Dalian is bound by COGSA's limitation of
liability." Opp'n 10:19-22.

However, Defendant misconstrues the holding of
<u>Carman</u>. The court in <u>Carman</u> held that the carrier was
not responsible for notifying every involved party of
the limitation of liability as long as the limitation
of liability language from COGSA was contained in the
bill of lading. 871 F.2d at 901. Defendant
specifically admits that the language of COGSA was not

contained in the Bill of Lading.  Opp'n 12:3-6.

Therefore, the holding in <u>Carman</u> is irrelevant.

Defendant makes clear that it is not aiming to limit its liability to $500 as provided in COGSA.  <u>Id.</u> at 12:25-26.  Instead, it argues that its liability should be limited based on the $2.00 per kilogram limitation explicitly contained in the Bill of Lading. <u>Id.</u> at 12:26-13:2.  The Bill of Lading states that Defendant's liability is "limited to US $2.00 per kilogram or US $100.00 per shipment which ever is smaller."  Hu Decl., Ex. 1.

Defendant correctly acknowledges that the $100.00 limitation is unenforceable.  Opp'n 13 n.2; <u>see</u> <u>Tessler</u> <u>Bros. (B.C.), Ltd. v. Italpacific Line</u>, 494 F.2d 438, 443 n.6 (9th Cir. 1974)(noting that any clause that lessens the liability of the carrier below the $500 enumerated in COGSA is null and void).  However, Defendant focuses on the limitation of $2.00 per kilogram.  Opp'n 12:25-13:2.  But focusing on the $2.00 per kilogram limitation ignores the full text of the limitation.  The clause limits liability to $2.00 per kilogram or $100.00, "which ever is smaller."  Hu Decl., Ex. 1.  Therefore, the only time the parties would rely on the weight-based portion of the clause is if the weight of the Cargo multiplied by $2.00 was less than $100.00.  Put simply, the limitation of liability would never be over $100.00.  Because this limitation lessens the liability to below the $500 limitation

COGSA provides, it is "null and void." <u>Tessler Bros.</u>, 494 F.2d 438, 443 n.6.

Defendant also argues that Plaintiffs had actual knowledge of the limitation of liability based on past conduct and communications of the parties. Opp'n 11:6-10. However, in making this argument, specifically through the Chao and Hu Declarations, Defendant focuses on the $2.00 per kilogram limitation, not the $500 default limitation in COGSA. In fact, Ms. Hu's Declaration notes that the $2.00 per kilogram limitation was included "in all bills of lading between [Defendant] and Krystal, Inc. in the past." Hu Decl. ¶ 10. The Court has already determined that the limitation of liability clause in the Bill of Lading is null and void because it lessens liability to below the $500 default limitation in COGSA. Therefore, Defendant cannot argue that Plaintiffs were on "actual notice" of a void limitation of liability. <u>Cf.</u> <u>Royal Exchange Assurance of Am., Inc. v. M/V Hoegh Dene</u>, 1988 A.M.C. 868 (W.D. Wash. 1987)(holding that carrier could still meet its burden to show shipper had a "fair opportunity" to opt for higher liability by showing actual knowledge of the COGSA limitation through communications and prior practices, rather than just constructive knowledge through quoting COGSA's limitation provision in the bill of lading, and such was an issue of fact).

Accordingly, Defendant has failed to raise a

23

genuine issue of material fact as to its limitation of
liability in the Bill of Lading.

            c.  *Proper Calculation of Damages*

      Because Defendant has failed to raise a genuine
issue of material fact as to whether the Bill of Lading
limited liability, the question then becomes what the
correct value of the damages is.

      Under COGSA, the "basis of recovery for the usual
carriage of goods [is] the value at the point of
destination." <u>Otis McAllister & Co. v. Skibs</u>, 260 F.2d
181, 183 (9th Cir. 1958); <u>see</u> <u>Ansaldo San Giorgio I v.
Rheinstrom Bros. Co.</u>, 294 U.S. 494, 495-96
(1935)(affirming "damages [computed] on the basis of
the market value of the goods at destination on the
date of arrival"); <u>Neptune Orient Lines, Ltd. v.
Burlington N. & Santa Fe Ry. Co.</u>, 213 F.3d 1118, 1120
(9th Cir. 2000)("'Market value at destination' is the
proper measure of the actual loss . . . ."). However,
the <u>Neptune Orient Lines</u> court noted that this formula
for determining damages is appropriate where "the
shipment is lost or destroyed." 213 F.3d at 1120.
Where the cargo is merely damaged, the measurement of
damages is "the difference between the fair market
value of the goods at their destination in the
condition in which they should have arrived and the
fair market value of the goods in the condition in
which they actually did arrive." <u>Texport Oil Co. v.
M/V Amolyntos</u>, 11 F.3d 361, 365 (2d Cir. 1993).

Plaintiffs argue that the market value of the Cargo is $217,678.74, "the price Dalian's buyer contracted to pay." Mot. 8:4-8. However, Defendant points to the fact that Plaintiffs have not provided any evidence that Plaintiffs sold the Cargo to Dalian. Opp'n 2:13-17. The invoice Plaintiffs provided to Defendant named Grand Union as the buyer, and nowhere on the invoice does it reference a sale to Dalian. See Chan Decl., Ex. 2. Moreover, the invoice for the sale of the Cargo to Grand Union lists the sale price as $72,980.00, the purported fair market value of the Cargo. Id.

In response to Defendant's Interrogatories, Plaintiffs claimed a total of $154,435.95 in damages, which included the $72,980.00 vehicle value, taxes, penalties paid to the buyer, and shipping. Decl. of Joan Cochran ("Cochran Decl."), Ex. 5, at 22, ECF No. 47-4. It was not until Plaintiffs filed this Motion that they argued they were entitled to recover $217,678.74 in damages.[4]

Further, the only evidence Plaintiffs have provided to support their claim of $217,678.74 in damages is the

_____

[4] Plaintiffs claim that they provided the contract regarding the sale of the Cargo from Dalian to the Chinese buyer, which contained the $217,678.74 purchase price, in their Initial Disclosures. Reply 7:7-11. However, Plaintiffs did not include this number in any prior computation of damages, including their Complaint (loss of $142,841.15), Initial Disclosures ("Damages are based upon the cost of repair, freight charges, taxes and the amount of a contractual penalty PLAINTIFFS paid to the Cargo buyer."), or responses to Defendant's Interrogatories (total damages of $154,435.95).

contract for sale of the Cargo from Dalian to the Chinese buyer.  See Wang Decl., Ex. A.  As noted, Defendant objected to this Exhibit based on hearsay. See Def.'s Evid. Objs. to Wang Decl. 7:9-20.  Ms. Wang did not lay the proper foundation in her Declaration for an exception to the hearsay rule, and therefore, the contract is inadmissible.[5]  Even if the contract was admissible evidence, Plaintiffs have failed to prove as a matter of law that this sale price is in fact the fair market value of the Cargo at the destination.

Plaintiffs have offered different damage calculations throughout this litigation, only arguing the highest, $217,678.74, in the instant Motion. Plaintiffs have failed to provide evidence confirming the sale of the Cargo from Plaintiffs to Dalian and the true market value of the Cargo at destination.  As such, genuine issues of material fact exist as to the calculation of damages, and the Court **DENIES** Plaintiffs' Motion as to damages.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion [45] as to the question of liability under their breach of contract claim, **DENIES as MOOT**

---

[5] Further, while Plaintiffs offer the Quotation Dalian received for repairs to the Cargo, see Wang Decl., Ex. B, they have not provided any evidence of what the value of the Cargo was when it arrived damaged in China.  Therefore, there the Court cannot calculate the proper damages owed to Plaintiffs using the typical formula.  See Texport Oil Co., 11 F.3d at 365.

Plaintiffs' Motion as to liability under their negligence claim, and **DENIES** Plaintiffs' Motion as to the amount of damages.

**IT IS SO ORDERED.**


DATED: September 26, 2017      s/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge